The **PORTSMOUTH GAS COMPANY, a** corporation, Petitioner,

v.

**FEDERAL POWER COMMISSION,** Respondent,

**United Fuel Gas Company and Central Kentucky Natural Gas Company,** Intervenors,

**Dayton Power and Light Company,** Intervenor,

**Commonwealth Natural Gas Corporation,** Intervenor,

**Cities of Lexington, Georgetown, Covington, Newport, Mt. Sterling, Paris, Irvine, Ravenna, Cynthiana, Ashland, Dayton, Catlettsburg, Bellevue, Winchester, Ft. Thomas and Ft. Mitchell, Kentucky,** Intervenors.

No. 13528.

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1957.

Decided June 25, 1957.

Mr. William L. Howland, Portsmouth, Ohio, with whom Mr. James D. Williams, Jr., Portsmouth, Ohio, was on the brief, for petitioner.

Mr. Howard E. Wahrenbrock, Asst. Gen. Counsel, Federal Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, W. Russell Gorman, Asst. Gen. Counsel, Federal Power Commission, and David S. Lichtenstein, Atty., Federal Power Commission, were on the brief, for respondent.

Mr. Richard A. Rosan, New York City, with whom Mr. John P. Randolph, Washington, D. C., was on the brief, for intervenors, United Fuel Gas Co. and Central Kentucky Natural Gas Co.

Messrs. Julian de Bruyn Kops and Roy D. Boucher, Dayton, Ohio, were on the brief for intervenor, Dayton Power and Light Co. Mr. Frederick C. Wellington, Dayton, Ohio, also entered an appearance for intervenor, Dayton Power and Light Co.

Messrs. Stanley M. Morley, Washington, D. C., and James O. Watts, Jr., Lynchburg, Va., were on the brief for intervenor, Commonwealth Natural Gas Corp.

Messrs. Charles S. Rhyne, Brice W. Rhyne, Eugene F. Mullin, Jr., and J. Parker Connor, Washington, D. C., submitted on the brief for intervenors, The City of Lexington, Kentucky, et al.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Portsmouth Gas Company, a retail distributor of natural gas, asks us to review and set aside an order of the Federal Power Commission which permitted its sole supplier, United Fuel Gas Company, to amend its demand-commodity rate form by providing for a long-term contract demand instead of the previously effective annually ascertained maximum-day demand. United Fuel also proposed substantial increases in both demand and commodity charges but, on motion of Portsmouth and two other intervenors, the Commission reserved that part of the proposal for future determination, and confined the hearing which preceded the order to the single issue raised by the proposed change in the demand billing formula. So, the actual rate level was not fixed, changed or affected by the order.

This is one of three petitions for review of the order which were heard together but, because of marked differences, are being treated in separate opinions. The other two were Cincinnati Gas & Electric Co. v. Federal Power Comm., No. 13,515, 1957, 100 U.S.App. D.C. ——, 246 F.2d 688, and Dayton Power & Light Co. v. Federal Power Comm., No. 13,525, 1957, 100 U.S.App.D.C. ——, 246 F.2d 694.

This case is unlike the Cincinnati Gas case, No. 13,515, where Cincinnati Gas and its subsidiary alleged aggrievement only by the long-term billing commitment feature of the contract demand component, and we held that apprehension of possible future injury through changes that might conceivably occur in economic conditions, but are not presently anticipated, did not give the petitioners standing to seek review of the Commission's order.

The present case is also unlike the Dayton case, No. 13,525, where we held that Dayton, which does not purchase gas from United Fuel or from Central Kentucky Natural Gas Company, whose rate form was also altered by the order, was not directly affected by the order and so lacked standing to seek review.

Portsmouth says in its brief it "is aggrieved by the orders[1] of the Commission in that its all requirements contract is unilaterally modified and rescinded, its property taken without due process of law and it is unreasonably and arbitrarily discriminated against." The Portsmouth brief goes on to say:

"In United Gas Pipe Line Company v. Mobile Gas Service Corporation, 350 U.S. 332 [76 S.Ct. 373], 100 L.Ed. 291 [373] (2–27–56), the Supreme Court held that the Natural Gas Act did not author-

---

1. In a second order the Commission modified the first in a manner immaterial here.

ize unilateral contract changes simply by the filing of a new rate schedule with the Federal Power Commission. The Commission may, however, make a change in the form of contract or the tariff under Sec. 5(a) of the Natural Gas Act [15 U.S.C.A. § 717d(a)] when the public interest so demands. In Federal Power Commission v. Sierra Pacific Power Company, 350 U.S. 348 [76 S.Ct. 368], 100 L.Ed. 300 [388] 2-27-56), the Court held that under the substantially identical provisions of the Federal Power Act [16 U.S.C.A. § 791a et seq.], the filing of a new rate and its approval by the Commission were ineffective to supersede the contract between the parties. The Court declared that the Commission's sole concern was whether the contract rate was so low as to adversely affect the public interest. The contract was held not to be 'unjust' or 'unreasonable' simply because it was unprofitable to the public utility.

"From these ultimate facts and legal principles, it follows, a fortiorari, that neither United nor the Federal Power Commission can change the contract between United and Portsmouth from an all requirements basis to a contract demand basis, or effectuate a change in the rate therein provided, without the consent of Portsmouth, short of a finding, not here present, that the contract adversely affects the public interest."

We observe that a similar objection to the order was urged before the Commission in Portsmouth's application for rehearing, and so is appropriate for our consideration under § 19(b) of the Act.[2] It might be argued that, in objecting to the introduction of a contract demand provision, Portsmouth conceded the legality or at least the effectiveness of a previously existing demand-commodity rate with respect to its purchases from United Fuel. Regardless of that consideration, we think it just and proper for present purposes first to examine Portsmouth's theory stated in the foregoing excerpts from its brief.

In order to determine the validity of Portsmouth's assertion that the order in question unilaterally "modified and rescinded" its all-requirements contract to the extent that it is aggrieved thereby, it is necessary first to ascertain just what the contract between the parties was when the order was entered; to find exactly its terms and conditions.

For many years, we are told, Portsmouth purchased its entire gas supply from United Fuel under a contract between them dated October 22, 1931. This agreement, which fixed a flat commodity rate of 37 cents per Mcf with a limited allowance for leakage, was for a term of five years from November 1, 1931; but by an annual exchange of letters—the last being in 1938—the parties agreed "to extend the expired contract in all of its terms for another year from November 1st, or until we conclude a new contract." As late as August 7, 1953, a new contract had not been concluded, for as of that date the Commission said in Re United Fuel Gas Company, 100 PUR(NS) 405, 433, footnote 19:

"The October 22, 1931, service agreement with Portsmouth provides for the supply of the Buyer's entire requirements. No superseding service agreement or notice of cancellation has been filed, and the October 22, 1931, service agreement continues to remain on file with the Commission as an executed service agreement under United Fuel's F PC Gas Tariff."

While the record does not show whether a new contract has been executed since August 7, 1953, we gather from the briefs that there has been no further agreement. If there has been none, we hold that the contract of October 22, 1931, is still effective except insofar as

2. 15 U.S.C.A. § 717r(b).

it may have been lawfully altered or amended.

We are unable to learn from the record the terms and conditions of the October 22, 1931, contract which seems not to have been introduced, nor whether there has been any lawful alteration thereof or amendment thereto. United Fuel asserts that Article Third of that instrument, which fixed a flat rate of 37 cents per Mcf, "is no longer in effect, that the rate provisions which replaced said Article Third have been 'open' rates, subject to change under Section 4 of the Act [15 U.S.C.A. § 717c], that they have many times actually been changed by filings under said Section 4, that Portsmouth has participated in all of these changes * * *."

As the bases for the conclusions just quoted, United Fuel makes the following statements in its brief:

"The 1931 'contract' provided in Article Third for a price of 37¢ for each 1,000 cubic feet (Mcf).

"1) Effective September 1, 1946, pursuant to Federal Power Commission Order in Docket G-440, this was changed to a two-part rate consisting of a commodity charge of 17.67¢ per Mcf and a demand charge of 90¢ per Mcf of billing demand, with the billing demand based on the highest day's delivery. Portsmouth did not oppose this change.

"2) Effective February 6, 1952, the demand rate was changed to $1.45 and the commodity rate to 17.25¢ (G-1781). Portsmouth accepted this change.

"3) Effective February 15, 1953, Portsmouth was billed under United Fuel's 'GS-I' Rate Schedule, containing a $1.00 demand rate, a 23.-85¢ commodity rate, and a billing demand based on 'average daily demand in the billing month, but not less than the maximum demand so established in the previous eleven months.' These rates were the result of a settlement in Docket G-2055, participated in by Portsmouth.

"4) Effective March 1, 1954, as a result of a settlement in Docket G-2274, in which Portsmouth also participated, the demand rate became $1.27 and the commodity rate 22.97¢. All of these changed rates were billed and paid in accordance with United's then filed Rate Schedule 'or any effective superseding Rate Schedules.'"

These statements may be quite correct, but there is nothing in the record to substantiate them. If the accuracy of United Fuel's statements and subsequent conclusion be assumed, questions still remain which are unanswered in the record, as will appear.

In United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332 at page 343, 76 S.Ct. 373, at page 380, the Supreme Court said:

"* * * Admittedly, the Act presumes a capacity in natural gas companies to make rates and contracts and to change them from time to time, but nowhere in the Act is either power defined. The obvious implication is that, except as specifically limited by the Act, the rate-making powers of natural gas companies were to be no different from those they would possess in the absence of the Act: to establish *ex parte*, and change at will, the rates offered to prospective customers; or to fix by contract, and change only by mutual agreement, the rate agreed upon with a particular customer. * * *"

And in Federal Power Comm. v. Sierra Pacific Power Co., 1956, 350 U.S. 348, at page 353, 76 S.Ct. 368, at page 371, the Court said:

"* * * The Commission has undoubted power under § 206(a) [of the Federal Power Act, which is substantially identical with § 5(a) of the Natural Gas Act] to prescribe a change in contract rates whenever it determines such rates to be unlawful. * * *

"The condition precedent to the Commission's exercise of its power

under § 206(a) is a finding that the existing rate is 'unjust, unreasonable, unduly discriminatory or preferential.' * * *"

We do not know whether the condition precedent was met by the Commission in the proceeding in which it is said a demand-commodity rate was substituted for the contract rate. If not, United Fuel's unilateral filing of the new rate and the Commission's approval thereof were ineffective to supersede United Fuel's contract with Portsmouth. 350 U.S. at pages 352–353, 76 S.Ct. at page 371. Apparently Portsmouth did not agree to the change, since United Fuel says only that "Portsmouth did not oppose this change."

If the contract rate was unilaterally changed by United Fuel with Commission approval and so was ineffective, Portsmouth may nevertheless be bound by the change if it offered no opposition and has since acquiesced. That is a question we do not reach in the present state of the record. Nor need we now decide whether the two-part rate, if lawfully substituted for the contract rate, is "open" so that it is subject to change under § 4 of the Act, as United Fuel asserts; and, if so, whether Portsmouth is aggrieved by the change made by the order under consideration. These questions do not arise until the basic facts, about which we cannot speculate, have been found by the Commission.

We think it essential that the record show the Commission's judgment—and its reasons for reaching it—as to the exact legally effective terms and conditions of the contract, if any, between United Fuel and Portsmouth as the same existed immediately prior to the entry of the order under review. While we may on occasion judicially notice Commission orders, we think it impractical and therefore improper to do so in this case, where the effect or validity of several orders may depend on the nature of the proceedings in which they were entered, and where conclusions must be reached from numerous orders and proceedings and perhaps from the conduct of the parties—conclusions which should be made in the first instance by the Commission.

Consequently the order under review will be set aside as having been prematurely entered on an incomplete record which does not support it; and the case will be remanded to the Commission for such additional hearing and proceedings as may be necessary to enable it to supplement its original findings and conclusions by making findings and reaching conclusions concerning the following and any other relevant matters not previously covered:

1. The terms and conditions of the contract of October 22, 1931, between United Fuel and Portsmouth, and whether that contract has been superseded by a new contract executed by the parties. If so, what is the new agreement?

2. If a new contract has not been made, what alterations in or amendments to the old one have been made and how were they effected? In making them, did the Commission meet the condition precedent described in the Sierra Pacific opinion?

3. If a new contract has not been made, and if the dual rate was ineffectively substituted for that fixed by the old contract, is the contract rate still in effect or is Portsmouth estopped by acquiescence, or otherwise, to question the substitution?

4. If the substitution was lawfully made or, if not, is nevertheless binding on Portsmouth, is the substituted rate open to unilateral change by United Fuel when the Commission approves?

After having made findings and reached conclusions concerning the questions just stated and any others it may regard as pertinent, the Commission should then enter such order as it may deem appropriate in the light of all the facts and circumstances developed on the record as supplemented. Any party to the proceeding who is aggrieved by the or-

der may petition for review. Pending that action, the rates and billing procedures now being observed should be continued in effect, under bond or not as the case may be, in order to avoid confusion in the conduct of business in the interim.

Remanded for further proceedings.