**METAL PRODUCTS WORKERS UNION, LOCAL 1645, UAW–AFL–CIO,**
Petitioner

v.

The **TORRINGTON COMPANY,**
Respondent.

**Civ. No. 10624.**

United States District Court
D. Connecticut.

May 1, 1965.

Jerome S. Rubenstein, of Rubenstein & Rubenstein, New York City, for petitioner.

Jay S. Siegel, Hartford, Conn., and William J. Larkin, 2d, of Larkin & Pickett, Waterbury, Conn., for respondent.

TIMBERS, Chief Judge.

### QUESTION PRESENTED

Respondent's motion for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., presents the question whether this Court should vacate an arbitrator's award that a recall after strike grievance is not arbitrable under the collective bargaining agreement between the parties, the issue of arbitrability having been the only issue expressly submitted by the parties to the arbitrator. The Court holds the arbitrator's award should not be vacated and accordingly grants respondent's motion for summary judgment.

### FACTS

Petitioner Metal Products Workers Union, Local 1645, UAW–AFL–CIO (the Union), a labor organization representing employees of respondent The Torrington Company (the Company), petitioned for an order vacating an arbitration award pursuant to a collective bargaining agreement between respondent and petitioner. Respondent moved for summary judgment.

Jurisdiction is based on Section 301 of the Labor Management Relations Act (29

U.S.C. § 185) and through it are invoked the remedies of Section 10 of the United States Arbitration Act (9 U.S.C. § 10).

The facts necessary to a determination of respondent's motion for summary judgment are not in dispute.

The Company and the Union entered into a collective bargaining agreement September 27, 1961. It expired September 27, 1963.

Upon termination of the agreement, the Union called a strike because no new agreement had been reached. The strike lasted until January 18, 1964.

Prior to and during the strike, the Company and the Union entered into negotiations for a new agreement. They arrived at a new agreement January 18, 1964.

At the time the new agreement was reached approximately two thousand employees were still on strike.

January 20, 1964, pursuant to the multi-step grievance procedure of the new agreement,[1] the Union filed a grievance alleging that the Company violated the

new agreement by failing to call back to work, following termination of the strike, Michael Chiarito, an employee in the Company's heat treatment department and a member of the Union, in accordance with the seniority provisions of the collective bargaining agreement.

The Chiarito grievance was processed through the grievance procedure, culminating in the rejection of the grievance by the Company March 17, 1964 primarily on the ground that the provision of the agreement governing recall of employees after layoff due to lack of work[2] did not control the method of recalling employees upon termination of the strike.

The Union, pursuant to Article V, Section 2 of the agreement, appealed the rejection of the Chiarito grievance to the American Arbitration Association April 14, 1964.

The Company, in a letter to the American Arbitration Association dated May 28, 1964, asserted that, because the seniority provisions of the agreement did not control the recall of employees following the strike, the grievance was not arbi-

1. Article IV, Section 1 provides:
 "Any dispute or question in regard to wages, hours, and working conditions, or in regard to the interpretation or application of any of the provisions of this agreement, shall be subject to the following grievance procedure:
 "(a) First the employee involved will take up the grievance orally with his foreman. If the employee so chooses this may be done with his steward being present or at the request of the employee by his steward alone. If the grievance is not settled it may then be reduced to writing on the forms provided and given to the foreman for his written answer.
 "(b) If the grievance is not settled in the first step, it shall be taken up by the chairman of the grievance committee together with such members of the committee as may be necessary, and the Manufacturing Manager or his authorized representative.
 "(c) If the grievance is still not settled, it may then be taken up by the grievance committee, with or without the International Representative of the Union, and the Vice President of Industrial Relations or his authorized representative."

2. Article IX, Section 15 provides:
 "When making recalls or replacements to a job from which layoffs or transfers in lieu of layoff were made, the employee with the highest job seniority will be the first to be recalled or retransferred, unless the work to be done requires special skills. An employee who bumps into or is transferred (in lieu of bumping or layoff) to another job shall not have job recall or retransfer rights to that job. Such rights shall exist only in respect to the employee's last permanent job from which he was so removed.
 "If that employee is in the plant, the vacancy caused by his retransfer shall be filled by the employee in the plant with the highest job seniority and recall rights. If there is no employee in the plant with recall rights to that job, it shall be filled by the employee with the highest plantwide seniority on the layoff list who is able to do the job in one (1) week.
 "All full time employees shall be recalled before any part time employee is recalled unless it is a case where none of the full time employees could do the job in question within a week."

trable within the meaning of the arbitration clause of the agreement.[3]

In accordance with the agreement, John A. Hogan was appointed as arbitrator by the American Arbitration Association pursuant to its Voluntary Labor Arbitration Rules. At a hearing held June 17, 1964, the parties agreed to submit to arbitration only the issue of whether the Chiarito grievance was arbitrable.[4]

June 26, 1964 the arbitrator, after reviewing the evidence and arguments presented by the parties, made the following award:

"Under the facts of this case there is no Contract clause to interpret or apply and, therefore, the matter is not arbitrable."

The award was based on the following findings set forth in the arbitrator's opinion:

"1. The parties, by their understanding and by the practice followed in returning almost 2000 employees since the strike, departed from the recall-after-layoff provisions of the Contract.

"2. That the seniority provisions were not to govern the return of employees was made known to the Union on January 18, 1964 when the Union's suggestions for applying the recall provisions were rejected by the Company.

"3. The Contract has no specific provisions establishing the procedures for returning workers after a strike. Considering this fact along with 1 and 2 above, there is no Contract provision to arbitrate.

"4. The recall provisions, based on job seniority, refer to recall after layoff or transfer in lieu of layoff.

"5. The parties did not provide in their settlement provisions that the recall provisions under layoff conditions were to govern returning employees to work after the strike.

"6. The arbitrator may not by his decision in effect write such a clause into the Contract. Under Article V, 3, the arbitrator 'shall have no power to add to * * * the provisions of this Agreement.'

"7. The history of negotiations on this matter, the rejection of the Union's suggestion that the seniority provisions of the Contract be followed, the understanding reached, and the practice followed, add up to the conclusion that the seniority provision of the Contract were [sic] specifically not to govern the return to work of the strikers. *For the pur-*

---

3. Article V, Section 1 provides:
"If a grievance is not settled after it has been processed through the three (3) steps described in Article IV above, and if it is a grievance with respect to the interpretation or application of any provisions in this contract and is not controlled by Section 1 of Article XIV, (Management) it may be submitted to arbitration in the manner herein provided."
Other relevant provisions of Article V are:
"Section 3.
"The arbitrator shall be bound by and must comply with all of the terms of this agreement and he shall have no power to add to, delete from, or modify, in any way, any of the provisions of this agreement. The arbitrator shall not have the authority to determine the right of employees to merit increases. The ar-

242 F.Supp.—52

bitrator shall have no authority to set or determine wages except as provided by Section 21 of Article VI, Wages.
"Section 4.
"The decision of the arbitrator shall be binding on both parties during the life of this agreement unless the same is contrary, in any way, to law."

4. The arrangement of the parties regarding the submission is set forth in a letter of June 18, 1964 to the parties from J. Robert Haskell, Regional Manager of the American Arbitration Association:
"The Arbitrator is to rule on the issue of 'Arbitrability'. If the Arbitrator should Rule that the matter is not arbitrable, then the Ruling will be issued as a final Award. If the Arbitrator should Rule that the matter is arbitrable, then his Ruling will be a Preliminary Ruling and further hearing shall be scheduled on the merits."

*pose of this case,* therefore, there is no Contract clause, the application or interpretation of which is arbitrable." (Emphasis is that of arbitrator)

### CLAIMS OF THE PARTIES

The Union, in petitioning this Court to vacate the award, alleges that the arbitrator was guilty of misbehavior and exceeded his powers under the collective bargaining agreement in that (i) he interpreted too restrictively the scope of the arbitration clause in the new agreement; (ii) he ignored decisions, including those of the United States Supreme Court, holding similar grievances arbitrable under similarly worded arbitration clauses; (iii) he found relevant to the issue submitted to him "accommodations that may have been made by the parties" subsequent to the filing of the grievance; and (iv) apart from whether the arbitrator exceeded his powers, his award is "flagrantly at variance with declared public policy."

The Company, in moving for summary judgment, alleges that (i) the Union's motion to vacate, having been filed more than 30 days after the Union received notice of the award, is barred by Section 52–420 of the Connecticut General Statutes which provides that motions to vacate arbitration awards must be made within 30 days from the time the party seeking to vacate received notice of the award; (ii) this Court lacks jurisdiction to entertain the Union's motion to vacate for the reason that the Union, having failed properly to state a claim under Section 301 of the Labor Management Relations Act, cannot avail itself of the three month limitation provision in the United States Arbitration Act,[5] a statute which alone confers no jurisdiction upon this Court; and (iii) there are no valid grounds for setting aside the award.

### JURISDICTION AND TIMELINESS OF THE PETITION

The Court rejects the first two claims advanced by the Company in support of its motion for summary judgment.

 Where a proceeding turns upon the construction of a collective bargaining agreement in industries affecting commerce and, more specifically, upon the determination of the obligations of the parties to arbitrate disputes arising under the agreement, the courts in this Circuit read expansively the grant of jurisdiction in Section 301(a) of the Labor Management Relations Act.[6] The instant petition to vacate clearly places in controversy the obligation of the Company to arbitrate the Chiarito grievance. Moreover, the Union did not restrict its jurisdictional claim to the United States Arbitration Act,[7] but expressly asserted jurisdiction pursuant to both Section 301(a) and the Arbitration Act. The Court sees no reason to depart from the firmly established practice in this Circuit of exercising jurisdiction pursuant to Section 301(a) in actions involving the obligations of parties to arbitrate under a collective bargaining agreement where the remedy sought is one authorized by the Arbitration Act.[8]

---

5. 9 U.S.C. § 12:
 "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. * * *"

6. Black-Clawson Co., Inc. v. International Ass'n of Machinists, 313 F.2d 179, 181–182 (2 Cir. 1962); Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, 167 F.Supp. 817 (D.Conn.1958), appeal dismissed, 269 F.2d 618 (2 Cir. 1959).

7. See Royal Industrial Union, Local 937 v. Royal McBee Corp., 217 F.Supp. 277 (D.Conn.1963).

8. American Mach. & Foundry Co. v. UAW, 48 CCH Lab. Cas. ¶ 18,452 (S.D.N.Y. 1963), aff'd, 329 F.2d 147 (2 Cir. 1964) (motion to vacate); Electric Specialty Co. v. Local 1069, 222 F.Supp. 314 (D. Conn.1963) (motion to vacate, modify or correct); Royal Industrial Union, Local 937 v. Royal McBee Corp., supra note 7 (motion to modify and correct); Bridgeport Rolling Mills v. Brown, Civil No. 8995 (D.Conn.1962), aff'd, 314 F.2d 885 (2 Cir. 1963), cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963) (motion to vacate); Armstrong-Norwalk Rubber Corp. v. Local 283, supra note 6.

It follows that the period of limitation applicable to the instant proceeding is the three month period prescribed by the United States Arbitration Act and not, as the Company urges, the shorter Connecticut period. Although the Arbitration Act itself confers no jurisdiction upon this Court, "it does provide an additional procedure and remedy in the federal courts where jurisdiction already exists." [9] The Court, having determined that Section 301(a) independently establishes its jurisdiction of the parties and the subject matter of the action, finds that procedures authorized by the Arbitration Act, including the three month limitation period, were available to the Union. The petition to vacate is timely.

## COURT'S FUNCTION UNDER SECTION 10 OF THE ARBITRATION ACT

■ ■ The function of this Court in determining whether to vacate an arbitration award is "severely limited." [10] The statute establishing the remedy sought by the Union expressly provides four grounds for setting aside an award; [11] only two are urged here by the Union, namely, that the arbitrator was "guilty of * * * misbehavior by which the rights of [petitioner] have been prejudiced" [12] and that he "exceeded [his] powers." [13]

The two statutory grounds urged by the Union do not authorize setting aside an award for "erroneous finding of fact or * * * misinterpretation of law," [14] "insufficiency of supporting facts" [15] or misconstruction of a contract.[16] To warrant vacating the instant award on the statutory grounds asserted, the Union must clearly demonstrate that the arbitrator's award amounted to a "manifest disregard" [17] of the law or "manifest[s] an infidelity" to the arbitrator's obligation to interpret

9. Royal Industrial Union, Local 937 v. Royal McBee Corp., supra note 7, at 278.

10. Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2 Cir. 1960), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960).

11. 9 U.S.C. § 10:
"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
"(a) Where the award was procured by corruption, fraud, or undue means.
"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

12. 9 U.S.C. § 10(c).

13. 9 U.S.C. § 10(d).

14. Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., supra note 10, at 808; Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., 312 F.2d 299, 300 (2 Cir. 1963), cert. denied, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

15. Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., supra note 14, at 300.

16. Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

17. Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., supra note 10, at 808; San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Limited, 293 F.2d 796, 801 (9 Cir. 1961).
The parties, pursuant to Article V, Section 4 of the agreement, supra note 3, agreed to be bound by an arbitration decision "unless the same is contrary, in any way, to law."

and apply the collective bargaining agreement.[18]

■■ That the parties initially submitted for determination by the arbitrator the question of the arbitrability of a grievance under a collective bargaining contract—an issue ordinarily reserved for determination in the first instance by the federal courts [19]—does not enlarge, in the view of this Court, the otherwise restricted scope of review authorized by the Arbitration Act. Where the intention of the parties to exclude "from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator" [20] is clearly demonstrated, as in the instant case,[21] there appears no reason not to follow the statutory rules that customarily limit this Court's authority in reviewing arbitrators' awards. The Court finds nothing in the Arbitration Act or in the national labor policy of promoting industrial stabilization through settlement of labor disputes by arbitration—clearly enunciated in those decisions reserving to the courts the task of determining "substantive arbitrability" [22]—which precluded the parties from agreeing to arbitrate the threshold question whether the Chiarito grievance was arbitrable.

■ The Union was in no way compelled to submit the question of arbitrability to arbitration. Upon the Company's final rejection of the grievance March 17, 1964, thus exhausting the multi-step grievance procedure under the collective bargaining agreement, the Union, in order to pursue the grievance under Article V, Section 2 of the agreement, was bound to appeal the grievance to the American Arbitration Association. Once the appeal was taken and the Company made clear its intent to dispute the arbitrability of the grievance,[23] however, the Union was entitled to petition this Court for an order, pursuant to Section

18. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

19. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546–547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Drake Bakeries, Inc. v. Local 50, 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., supra note 18, at 599; International Union of Elec., Radio and Mach. Workers v. General Elec. Co., 332 F.2d 485 (2 Cir. 1964), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964); Local 12298 v. Bridgeport Gas Co., 328 F.2d 381, 383 (2 Cir. 1964).

20. United Steelworkers of America v. Warrior & Gulf Nav. Co., supra note 19, at 583 n. 7.

21. Supra note 4.

22. John Wiley & Sons, Inc. v. Livingston, supra note 19, at 558; accord, Drake Bakeries, Inc. v. Local 50, supra note 19, at 263–264; United Steelworkers of America v. American Mfg. Co., supra note 19, at 567–568; United Steelworkers of America v. Warrior & Gulf Nav. Co., supra note 19, at 578–581; United Steelworkers of America v. Enterprise Wheel & Car Corp., supra note 19, at 596–597.

23. Joseph J. Palker, Assistant to the Director of Industrial Relations for the Company, in a letter of May 28, 1964 to J. Robert Haskell, Regional Manager of the American Arbitration Association (a copy of which went to William Moriarty, International Representative of the Union), stated the Company's position as follows:

"The company wishes to remind the parties concerned of its position in case L–99–64 concerning an alleged violation of the seniority clause.

"As specifically noted in the third step grievance reply, the method of recalling employees following the strike was not governed by contract language; therefore, the company continues its position that the dispute does not present an arbitrable issue."

4 of the Arbitration Act,[24] compelling respondent to arbitrate the Chiarito grievance. Had the Union followed the latter procedure, the Court would have been free to consider the question of "substantive arbitrability" unrestricted by limitations imposed by Section 10 of the Arbitration Act. In view of the procedure the Union did pursue, however, the Court is precluded from examining *de novo* the question whether the agreement obligated the parties to arbitrate the merits of the Chiarito grievance.

## APPLICATION OF STATUTORY STANDARDS TO AWARD

■ The Court, applying to the arbitrator's award the statutory standards of Section 10 of the Arbitration Act, as interpreted by the courts, finds that the award neither "manifests an infidelity" to the provisions of the agreement, nor does it amount to a "manifest disregard" of the law governing substantive arbitrability.

■ The controlling rules of construction for determining substantive arbitrability are found in the following familiar passages of the Supreme Court's decision in United Steelworkers of America v. Warrior & Gulf Navigation Co.:[25]

"[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 [of the Labor Management Relations Act] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.[26]

\* \* \* \* \*

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."[27]

■ Construing only the language of the collective bargaining agreement to ascertain whether the Chiarito grievance "on its face is governed by the contract,"[28] the Court finds persuasive evidence that the Company was not obligated to arbitrate the grievance. The Chiarito grievance unquestionably involved the recall of a striking employee in accordance with the seniority provisions

24. See, e.g., Local 12298 v. Bridgeport Gas Co., 222 F.Supp. 297 (D.Conn.1963), rev'd on other grounds, 328 F.2d 381 (2 Cir. 1964).

25. 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960).

26. Id. at 582–583.

Warrior & Gulf was instituted by a motion to compel arbitration. The rules of construction applicable to a motion to compel arbitration, in the view of this Court, are equally applicable in testing, on a motion to vacate an arbitration award, the validity of an arbitrator's ruling on substantive arbitrability.

The Court of Appeals for this Circuit has interpreted this passage as follows:

"The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement." Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 298 F.2d 644, 645–646 (2 Cir. 1962).

27. 363 U.S. 574, 584–585.

28. United Steelworkers of America v. American Mfg. Co., supra note 19, at 568.

of the agreement.[29] There is no provision in the seniority clauses or elsewhere in the agreement for the application of seniority rules to recalled strikers. The only provision in the agreement dealing with recall on the basis of job seniority is concerned with recall after layoff or recall after transfer in lieu of layoff [30]— situations clearly not here involved. Where there is no contract provision dealing with the subject matter of the grievance, to find that such grievance is arbitrable under a contract clause calling for arbitration of "a grievance with respect to the interpretation or application of *any provisions in this contract,*" [30a] (emphasis added) in effect would be to rewrite the contract for the parties—a function specifically withheld from the arbitrator [31] and by judicial restraint from the Court.

Furthermore, contrary to the Union's position, a reading of the agreement discloses that the parties did not obligate themselves to arbitrate *all* grievances except those involving management rights enumerated in Article IV, Section 1.[32]

Under Article V, certain grievances subject to the multi-step grievance procedure in Article IV of the agreement are not arbitrable. While the parties broadly defined those grievances subject to the *grievance procedure* as including "Any dispute or question in regard to wages, hours, and working conditions, or in regard to the interpretation or application of any of the provisions of this agreement," [33] they agreed to *arbitrate* only those grievances involving "interpretation or application of any provisions in this contract" not settled under the three-step grievance procedure.[34]

Despite this language of the agreement indicating an intention not to arbitrate the subject matter of the Chiarito grievance, the Court, solely on the basis of the language of the agreement, would not find "beyond peradventure of doubt" [35] that the grievance was not intended to be covered by the arbitration clause. If the arbitrator's award were grounded solely upon the language of the contract, therefore, it would amount to a "manifest disregard" of the applicable law [36] so as to require this Court to grant the Union's petition.

---

**29.** The grievance, filed January 20, 1964, reads:

"The Union maintains the Company violated the seniority provisions of the contract by neglecting to call Michael Chiarito back to work."

In Torrington Co., Inc. v. Metal Products Workers Union Local 1645, UAW-AFL-CIO and International Union, UAW-AFL-CIO, 237 F.Supp. 139 (D. Conn.1965), rev'd, 247 F.2d 93 (1965), where the Company sought a declaratory judgment holding three other grievances filed subsequent to the Chiarito grievance not arbitrable, the Union contended before Judge Zampano that the three grievances there involved did not concern the method of recall from strike. However, in Defendants' Brief In Support Of Their Motions For Summary Judgment And To Compel Arbitration, filed November 24, 1964, the Union acknowledged that the issue in the Chiarito grievance involved recall from strike:

"Unlike the grievance of Michael Chiarito * * *, in which both Company and Union by their stated positions recognized that the issue concerned recall from strike, none of the

grievances directly involved in this litigation makes any reference to that subject." Defendants' Brief, p. 28.

**30.** Article IX, Section 15, supra note 2.

**30a.** Article V, Section 1, supra note 3.

**31.** Article V, Section 3, supra note 3.

**32.** Petitioner's Memorandum In Opposition To Respondent's Motion For Summary Judgment, p. 14.

**33.** Article IV, Section 1, supra note 1.

**34.** Article V, Section 1, supra note 3.

**35.** Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., supra note 26.

**36.** United Steelworkers of America v. American Mfg. Co., supra note 19, at 569, where the Court indicated that a dispute as to "the meaning, interpretation and application" of a collective bargaining agreement exists upon the mere assertion by the union, opposed by the company, that the company violated a specific provision of the contract.

Accord, United Steelworkers of America v. Warrior & Gulf Nav. Co., supra note

The instant award, however, was not based solely upon the language of the agreement. In ruling that the Chiarito matter was not arbitrable, the arbitrator relied also upon a finding based on evidence presented to him by the parties at the June 17, 1964 hearing that the parties reached an understanding during strike settlement negotiations held January 18, 1964 that the recall after layoff provision of the new agreement would not govern the return to work of striking employees.

The arbitrator found that on January 18, 1964, during the course of strike settlement negotiations and when the question of how employees would be returned to work was under consideration, the Company rejected the Union's proposal that the striking workers be recalled according to job seniority as prescribed by the recall after layoff provision of the agreement. The Company represented, according to the arbitrator, that it would "recall as many employees as possible and as fast as possible and that where feasible its general policy would be to recall on a plant seniority basis and then assign the employees to jobs on the basis of job requirements provided they had the qualifications to perform the work. There would be devia-

tions from the general policy depending on the particular circumstances." The Company thereupon returned approximately 2000 employees to work pursuant to this understanding. The recall after layoff provision was not followed in returning Mr. Chiarito or his fellow employees to work.

The Court finds that the award does not amount to a manifest disregard of the law. It is based upon the arbitrator's interpretation of the collective bargaining agreement in light of the evidence of the parties' understanding not to follow the seniority provisions in recalling striking employees. The arbitrator neither exceeded the power granted him by the parties, nor was he guilty of misconduct within the meaning of Section 10 of the Arbitration Act.

The arbitrator's consideration of the evidence relating to the strike settlement negotiations was entirely proper. The history of the parties' negotiations bore directly on the "scope of the contractual promise to arbitrate"[37] the merits of the grievance in question. Moreover, the evidence related to negotiations between the parties antedating both the filing of the Chiarito grievance and the Company's contesting of the arbitrability of the grievance.[38]

19, at 584–585, where the Court came to the same conclusion interpreting a clause providing for arbitration of disputes "as to the meaning and application of the provisions of this Agreement."

37. International Union of Elec., Radio and Mach. Workers v. General Elec. Co., 332 F.2d 485, 490 (2 Cir. 1964), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964) ; cf. Independent Petroleum Workers of America v. American Oil Co., 324 F.2d 903, 907 (7 Cir. 1963), aff'd per curiam by an equally divided Court, 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964).

38. International Union of Elec., Radio and Mach. Workers v. General Elec. Co., supra note 37, at 489 n. 4, where the court indicated that consideration of negotiations conducted after refusal of the company to arbitrate would be improper. The Court does not find it necessary to determine the question whether the ar-

bitration hearing or the district court is the appropriate forum for presenting evidence of bargaining history relevant to the narrow issue of substantive arbitrability. It notes, however, that this question is by no means resolved. Compare, Independent Petroleum Workers of America v. American Oil Co., supra note 37, at 907, and Pacific Northwest Bell Tel. Co. v. Communications Workers, 310 F.2d 244, 247–249 (9 Cir. 1962) (approving hearing by district court), with, A. S. Abell Co. v. Baltimore Typographical Union, 338 F.2d 190 (4 Cir. 1964) and Local 12298 v. Bridgeport Gas Co., 328 F.2d 381 (2 Cir. 1964) and Torrington Co., Inc. v. Metal Products Workers Union Local 1645 and International Union, 237 F.Supp. 139 (D.Conn.1965), rev'd 247 F.2d 93 (1965), (approving expressly or by implication hearing by arbitrator). In the instant case the parties voluntarily elected to offer evidence of bargaining history in the arbitral forum. The

Where, as here, no contract provision expressly excludes the particular grievance from arbitration, the Supreme Court has left no doubt that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[39] This Court finds that evidence presented to the arbitrator relating to strike settlement negotiations constituted "the most forceful evidence" of the parties' intent to exclude from the scope of the arbitration clause grievances involving application of the seniority provisions to employees returning from strike.

 "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[40] Unless this statement is to be viewed as surplusage—a characterization this Court is reluctant to ascribe to language frequently repeated by the Supreme Court (e. g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964); Atkinson v. Sinclair Refining Co., 370 U.S.

238, 241 (1962); Drake Bakeries Inc. v. Local 50, 370 U.S. 254, 256 (1962))— the principle is believed to be both appropriate to and dispositive of this case.

The parties were contractually obligated to arbitrate only those grievances involving interpretation or application of a provision of the agreement. The evidence at the arbitration hearing established that the Chiarito grievance involved a matter not governed by a provision of the agreement. Absent such a provision subject to interpretation or application, as the arbitrator held, there was no arbitrable grievance as defined by the arbitration clause.

## CONCLUSION

There being no genuine issue as to any material fact and defendant being entitled to judgment as a matter of law, respondent's motion for summary judgment is granted. Petitioner's petition to vacate the arbitrator's award is dismissed.

---

Court finds it appropriate to honor their preference.

**39.** United Steelworkers of America v. Warrior & Gulf Nav. Co., supra note 19, at 584–585. See text accompanying note 27 supra.

**40.** Id. at 582.
The Court is mindful of the admonition by the Court of Appeals against reliance on this statement while at the same time urging that the rules of construction set forth in the same opinion for interpreting an agreement to arbitrate be disregarded. International Union of Elec., Radio and Mach. Workers v. General Elec. Co., supra note 37, at 490 n. 4. This Court has endeavored to follow, not disregard, such rules of construction.