**LOCAL 7-644, OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO, a Voluntary Unincorporated Association, Plaintiff-Appellant,**

v.

**MOBIL OIL COMPANY, 'a Division of Socony Mobil Oil Company, Inc., a Corporation, Defendant-Appellee.**

**No. 14930.**

United States Court of Appeals
Seventh Circuit.

July 29, 1965.

Rehearing Denied Sept. 9, 1965.

---

John M. Schobel, St. Louis, Mo., Thomas Q. Keefe, East St. Louis, Ill., for appellant, Gruenberg, Schobel & Souders, St. Louis, Mo., of counsel.

Robert L. Broderick, E. St. Louis, Ill., J. Terrell Vaughan, St. Louis, Mo., for appellee, Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, Mo., Pope & Driemeyer, East St. Louis, Ill., of counsel.

Before DUFFY, SCHNACKENBERG, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is an appeal from the district court's order denying enforcement of an arbitration award made pursuant to a collective bargaining agreement entered into between plaintiff Local 7–644, Oil, Chemical and Atomic Workers International Union, AFL–CIO and defendant Mobil Oil Company, a division of Socony Mobil Oil Company, Inc. The action in the district court was instituted under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The principal questions are whether the arbitrator ignored the issue submitted to him for decision and whether he exceeded his authority by ordering enforcement of a contractual term not agreed to by the parties, but created by himself.

Mobil and Local 7–644 had been parties to a labor agreement that expired June 1, 1962. When they were unable to agree on a new contract, the union conducted an economic strike for approximately six months. The strike began August 7, 1962, and ended February 4, 1963. During the strike the company and the union continued to bargain not only for a new agreement but also for back-to-work conditions which would prevail if and when the strike ended. The company took the position that its

employees' 1963 vacations should be reduced by one-half because they had not worked during the six months they were on strike. The union argued that there should be no reduction. The company's position was stated in a letter dated January 31, 1963, addressed to the union and signed by its manager, H. R. Lutz.[1]

On February 4, 1963, a new one-year working agreement was entered into and the employees returned to work. Article XII of the contract dealt with vacations. On the same day the contract was signed, the company posted a notice containing return-to-work instructions. The notice included the statement, "Your 1963 vacation will be reduced by half due to the six-month strike." Thereafter the union filed a grievance alleging that the company had violated Article XII. In accordance with the provisions of the contract an arbitrator was selected to resolve the grievance. The issue was framed by agreement as follows: "Did the Company violate the controlling agreement(s) in the manner in which it applied the vacation provisions thereof to the 1963 vacations of employees in the bargaining unit? If so, what remedy is proper?" The arbitration clause of the contract provided that the decision of the arbitrator should be conclusive.

The arbitrator conducted two hearings. At the conclusion of the first hearing he rendered an opinion in which he considered Article XII and the so-called Lutz letter. He also discussed the evidence relating to both matters. Essentially, the arbitrator stated that if Article XII gave the company the right to treat the 1963 vacations as it did, there was no need to determine whether the Lutz letter had been accepted by the union and thereby had become a part of the back-to-work agreement.

The arbitrator reached the conclusion that Article XII did not directly specify any minimum number of days that must be worked in one year in order for an employee to qualify for a vacation the next year. The arbitrator noted that Article XII contained the provision that vacations with pay will be arranged "in accordance with the Company's established plan" and that no evidence had been presented with regard to the existence of a separate company vacation plan. He then proceeded to discuss the Lutz letter and the back-to-work negotiations. On the issue of whether the terms contained in the letter had been accepted by the union, the arbitrator stated that after careful study of the transcript and exhibits he was of the opinion that the evidence was "completely and hopelessly in direct conflict." He found that the evidence was so inconclusive on this issue that it afforded no basis for a resolution of the grievance. He therefore requested that the parties attempt to agree on whether there was in existence a company established plan requiring a minimum number of days worked in a preceding year in order for an employee to earn a full vacation. The arbitrator indicated that if the parties were unable to agree on the facts relating to this question, he would conduct a further hearing and hear testimony.

When the parties were unable to resolve the question, the arbitrator held a supplemental hearing. At this hearing, the company proffered additional evidence on the back-to-work negotiations

---

1. The Lutz letter reads in pertinent part:

January 31, 1963

Local 7–644, OCA WIU
243-a Collinsville Avenue
East St. Louis, Illinois
Attn: Mr. T. E. Roberts, President
Gentlemen:

This is to confirm our statements to you that vacations for Union-represented employees returning to work from strike will be handled in the following manner:

\*　　\*　　\*　　\*　　\*

(b) The 1963 vacation benefits of all Union-represented employees shall be reduced on account of the strike by one-twelfth (1/12) for each month an employee had less than a minimum total of two (2) weeks' or ten (10) working days' pay in a calendar month.

\*　　\*　　\*　　\*　　\*

Yours very truly,
H. R. Lutz,
Refinery Manager.

concerning a reduction of 1963 vacations. The arbitrator explained that he had already finally decided the issue on the disputed back-to-work settlement and that he would receive testimony only on whether the company had an established plan for vacations. After hearing testimony offered by the union on this question, the arbitrator found that the company had never adopted an established plan on vacations other than that contained in Article XII. He concluded that although this article provided that an employee who had accumulated a given number of years of active service received a paid vacation of corresponding length, it was silent about any reduction of vacation because of absence from work. On this basis he decided that paragraph (b) of the Lutz letter and the company notice reducing the 1963 vacations violated Article XII. Thereupon, the arbitrator directed the company to pay each of its employees any difference between what it actually paid for vacation time during 1963 and what it should have paid under his decision.

■■ In denying enforcement of the award, the district judge was of the view that the arbitrator had made a new contract for the parties and that the sole question for arbitration was whether there was a back-to-work agreement whereby the employees were to receive vacation pay on a reduced basis as outlined in the Lutz letter. After noting that the new agreement commenced February 4, 1963, the judge held that unless the contract specifically includes occurrences or events that happened by reason of facts that exist prior to the execution, the vacation rights of the employees are extinguished. The reasoning of the court seems to have been that since there had been a strike during the interval between the two bargaining agreements, those on strike had lost their status as "employees" and thus could not have been granted the vacation benefits provided by Article XII of the new agreement since these benefits were based upon the employees' length of service with the company. The district

court failed to recognize that absence from work because of an economic strike does not constitute a termination of the employer-employee relationship and does not vitiate the continuous service of an employee. The arbitrator, on the other hand, took the position that the employees "had not lost their agreement rights by the time they had returned to work" simply because they had performed no work during the strike. In other words, the arbitrator recognized that employees who engage in a lawful economic strike may retain full vacation benefits, gained in part under a terminated contract and in part during the period of the strike, if the new contract executed is susceptible of such interpretation.

The company contends that the arbitrator manifested an infidelity to his obligation to draw the award from the essence of the labor agreement. It further contends that he ignored the issue submitted to him and in effect created a new contract for the parties. We are impelled to reject these contentions. The opinion of the arbitrator indicates that he was fully cognizant of the issue presented to him for decision and that he did not go beyond the scope of his authority in rendering his award. The issue was not confined, as the district judge thought, to whether the back-to-work agreement included the conditions set forth in the Lutz letter. The issue was whether the company violated the controlling agreement(s) with respect to the 1963 vacations. The "controlling agreement(s)" included the new collective bargaining contract as well as any back-to-work agreement.

■ A court's role in reviewing arbitration decisions made pursuant to labor contracts is severely circumscribed. "(S)o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424

(1960). The district court erred in considering afresh the merits of the dispute submitted for arbitration. Even though we might disagree with the arbitrator's decision if we were to examine the merits of the dispute, there is nothing in the record to indicate that the award was arbitrary or that the arbitrator exceeded his authority.

The judgment of the district court is reversed.

SCHNACKENBERG, Circuit Judge (dissenting).

The district court was right in concluding that the arbitrator, whether from utter confusion or otherwise, had resorted to "his own brand of industrial injustice" in reaching the award which he made. The court's conclusion is fully supported by the record. I would affirm the district court.