**NEWARK STEREOTYPERS' UNION
NO. 18, etc., Plaintiff,**

v.

**NEWARK MORNING LEDGER CO.** and
Newark Newspaper Publishers Asso-
ciation, Defendants.

**Civ. A. No. 1186–65.**

United States District Court
D. New Jersey.

Dec. 19, 1966.

Carpenter, Bennett & Morrissey, New-
ark, N. J., Skadden, Arps, State, Meagher
& Flom, New York City, by Thomas L.

Morrissey, Newark, N. J., William R. Meagher, New York City, John F. Ferrick, Cambridge, Mass., Hugh J. Kelly, Scarsdale, N. Y., for plaintiff.

Shanley & Fisher, by Donald A. Robinson, David S. Cramp, Newark, N. J., Goldman, Evans & Goldman, by Tobias J. Berman, New York City, for defendants.

## OPINION

WORTENDYKE, District Judge:

This is an action upon cross-motions; the defendants moving for an Order confirming the arbitration award, the plaintiff moving for an Order vacating the award.

Plaintiff Labor Union (hereinafter Union), predicating jurisdiction on Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, filed its Complaint in this Court seeking a judgment against defendant-employer (hereinafter Ledger) to compel arbitration of the question of the number of employees who should be assigned to the operation of a stereotype plate-casting (M.A.N.) machine which was being installed by the Ledger in its newspaper printing plant in Newark, New Jersey. A Collective Bargaining Agreement (hereinafter Agreement) between the Union and defendant Newark Newspaper Publishers Association, acting on behalf of the Ledger, was in effect at all pertinent times hereinafter referred to. The Agreement governed conditions of employment of members of the Union by the Ledger. Section 26 of the Agreement provides as follows:

*"Section 26*

A Joint Standing Committee, should necessity arise, shall be formed, two to be appointed by the Publishers and two by the Union and the four so appointed, if unable to agree, shall select a fifth member who shall act as chairman. This Committee shall interpret any of the terms or conditions of this contract, should controversy arise concerning them, and shall have complete jurisdiction to adjudicate finally any and all disputes, including discharge cases, which are alleged to involve the interests of either party as defined in this contract. Under all circumstances work in the stereotyping room of the Publishers shall be continued without interference or interruption in a regular and orderly manner until all differences under the contract are settled by conciliation or arbitration. All majority decisions of the Standing Committee shall be final and binding upon both parties."

The Complaint alleged that in June, 1965, a question arose between the Union and the defendants regarding the number of men to be assigned to the M.A.N. machine. Each party to the Agreement appointed its representatives in accordance with Section 26, but the appointees of the parties were unable to resolve their disagreement respecting the manning of the machine, and they were also unable to agree upon an impartial chairman for the Joint Standing Committee (hereinafter Committee). Because of the inability of the parties to agree upon an arbitrator to act as Chairman of the Committee, and the absence of any provision in the Agreement dispositive of the consequent impasse, this Court was requested by the parties to designate and appoint such an arbitrator in order to effectuate the arbitration clause in the Agreement. The cause having come duly to issue upon the Amended Complaint and Answer thereto, summary judgment for the Union was entered by this Court's Order of December 23, 1965. That Order provided: (1) that the dispute as to the number of journeymen stereotypers who should be assigned to the operation of the M.A.N. machine was arbitrable under the Agreement; (2) that the Honorable Harry Heher (a retired Justice of the New Jersey Supreme Court) be designated as Chairman of the Committee provided for in Section 26 of the Agreement; (3) that the parties proceed to arbitrate their dispute before the Committee; and (4) that the fee and expense of the Chairman of the Committee be borne equally by plaintiff and defendants. The Court retained jurisdiction of the cause to enable

either party to apply for such other or further relief as might be necessary and proper.

The parties proceeded with the arbitration as ordered. On June 30, 1966, the Committee filed with the Clerk of this Court, a written "Decision and Determination of Dispute" signed and concurred in by a majority of the Committee upon written Findings of Fact, Conclusions of Law and the evidentiary record of proceedings before it which constituted the arbitration award upon the dispute submitted by the parties. That award is as follows:

"Upon the foregoing findings of fact, conclusions of law, and the entire record in this proceeding, the Joint Standing Committee makes the following resolution of the Dispute, and the Arbitration Award:

(1) The Star-Ledger Company has determined to use only one journeyman stereotyper in the operation of its M.A.N. Machine; and this determination is pursuant to the Star-Ledger's management prerogative,

(2) The Star-Ledger's Contract with the Union does not bar this determination;

(3) The Star-Ledger's shop practice does not bar this determination;

(4) The industry practice does not bar this determination;

(5) This determination is not in violation of the Collective Bargaining Agreement, but is in full accord with the essence of the provisions;

(6) One-man operation of the given M.A.N. Machine is safe, efficient and not unduly burdensome on the single stereotyper of the Union; and

(7) One-man operation of the M.A.N. Machine is proper and valid and effective in the Newark Star Ledger plant, and in keeping with all reasonable requirements."

The Ledger has moved this Court for an Order confirming the arbitration award. The Union has moved the Court for an Order vacating the award upon the following grounds:

"(1) Because a majority of the Joint Standing Committee refused to accept evidence of alleged witness-tampering by Ledger, thereby depriving Union of due process of law;

(2) Because the Award was a result of corruption, fraud or undue means;

(3) Because the Joint Standing Committee exceeded its powers as arbitrators by 'redeciding' the question of arbitrability of the dispute submitted."

In support of its motion to confirm the Award, the Ledger contends that the grounds urged for vacation thereof are insufficient in law and without support in the record or the affidavits submitted upon the cross-motions.

■ This Court's duty in the face of the confronting motion to vacate the award is prescribed by the United States Arbitration Act, 9 U.S.C. § 1 et seq. Section 10 of that Act authorizes the Court to make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

These statutory grounds for vacating an award must be read in the light of the rule that the Court's function in vacating, or confirming, an arbitration award is "severely limited". Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2nd Cir. 1960) cert. denied 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). To warrant vacating the award in this case, upon the statutory grounds asserted, the Union must " * * * clearly demonstrate that the [Committee's] award amounted to a 'manifest disregard' [1] of the law or 'manifest[s] an infidelity' to the [Committee's] obligation to interpret and apply the collective bargaining agreement." [2] Metal Products Workers Union, Local 1645, UAW–AFL–CIO v. Torrington Co., 242 F.Supp. 813, 819 (D.Conn. 1965) aff'd 358 F.2d 103 (2nd Cir. 1966).

It is the general rule that the courts will refuse to review the merits of an arbitration award. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). It is true that the arbitrator is not free to " * * * dispense his own brand of industrial justice", United Steelworkers of America v. Enterprise Wheel & Car Corp., supra at 597, 80 S.Ct. at 1361, but his interpretation and application of the collective bargaining agreement, and the arbitration which flows from such collective bargaining agreement, will not be questioned by the courts where the arbitrator has authority to act. Western Iowa Pork Co. v. National Brotherhood Packinghouse & Dairy Workers, Local No. 52, 366 F.2d 275, 277 (8th Cir. 1966); See Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677, 682 (2nd Cir. 1966); Local 7–644, Oil, Chemical & Atomic Workers International Union, AFL–CIO v. Mobil Oil Co., 350

F.2d 708, 712 (7th Cir. 1965) reh. denied September 9, 1965, cert. denied 382 U.S. 986, 86 S.Ct. 563, 15 L.Ed.2d 474 (1966). *The award may not be examined for alleged mistakes of law and erroneous evaluation of evidence.* Ficek v. Southern Pacific Company, 338 F.2d 655, 657 (9th Cir. 1964) reh. denied December 22, 1964, cert. denied 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965), citing Bower v. Eastern Airlines, Inc., 214 F.2d 623, 626-627 (3rd Cir. 1954); See Textile Workers Union of America, AFL–CIO, Local Union No. 1386 v. American Thread Co., 291 F.2d 894, 896 (4th Cir. 1961).

"The law favors arbitration and it has long been an accepted principle of law, with respect to review by a court of an arbitration award, that there exists strong presumption favoring the validity of the award. Burchell v. Marsh, 17 How. 344, 58 U.S. 344, 350, 15 L.Ed. 96." Nickals v. Ohio Farmers Insurance Company, 237 F.Supp. 904, 906 (N.D.Calif.1965).

If the above quotation were not the state of the law, then there would merely be a substitution of the Court's judgment in place of the judgment of the arbitrators chosen by the parties. This would make an award the *commencement*, not the end, of litigation. See Burchell v. Marsh, supra 58 U.S. at 349. "The present federal policy is to promote industrial stabilization through the collective bargaining agreement." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960).

### ALLEGED WITNESS TAMPERING

Since the proper construction of the collective bargaining agreement was for the Committee to determine, if its construction thereof had ample basis and cannot be held to be capricious, then the Committee's rulings as to the admissibility of evidence, justified by its interpretation of the Agreement, do not constitute

---

1. See Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

2. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

a refusal to hear material and pertinent evidence. Kreindler v. Judy Bond, Inc., 36 Misc.2d 948, 234 N.Y.S.2d 382 (1962) aff'd 18 App.Div.2d 1138, 239 N.Y.S.2d 532 (1963) cert. denied 375 U.S. 954, 84 S.Ct. 440, 11 L.Ed.2d 314 (1963). Further, an arbitration award will not be overturned based upon a misinterpretation of law, Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., supra 274 F.2d at 808, or insufficiency of supporting facts, Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S. A., 312 F.2d 299, 300 (2nd Cir. 1963) cert. denied 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).[3]

■ The Union, as part of its case before the arbitrators, called as a witness one William W. Pezdirtz, a resident of Kansas City, Missouri, to testify to the construction and method of operation of the M.A.N. machine and to give his expert opinion upon the question of the number of journeymen stereotypers required for its safe and efficient operation. Among the witness' qualifications was his employment from 1957 to 1963 as manager of a division of R. Hoe Company, manufacturer of printing presses and allied equipment, and exclusive sales agent in the United States of the German manufacturer of the M.A.N. machine. Upon termination of his employment by Hoe, the witness entered the employment of Wood Newspaper Machinery Corporation which manufactured the Wood Supermatic, a stereotype plate-casting machine competitive with the M.A.N. machine in the United States. The witness had been removed from the Wood payroll as of December 30, 1965, and had agreed with the Union to testify before the Committee under an arrangement made by the Union's counsel with Wood's President by the terms of which the travelling expenses, maintenance while in attendance before the Committee, and loss of earnings from his employment by Wood, would be paid by the Union, in whose behalf he had agreed to testify in the arbitration proceedings. In accordance with that arrangement, the witness was paid $1786.20 by the Union in advance and testified in behalf of the Union throughout the Committee's session of January 12, 1966. The scope of his testimony disclosed in detail, with the use of various exhibits, the parts of the M.A.N. machine and their functions. A suggestion by the Chairman of the Committee that the witness be permitted to examine the M.A.N. machine itself at the Ledger plant was taken under advisement by Ledger's counsel, the Committee hearings were adjourned, and the testimony of the witness was to continue the following day, January 13, 1966. At the opening of that day's session, Ledger's counsel acceded to the Chairman's suggestion that the witness be given an opportunity to inspect the machine at the Ledger plant, but upon being recalled to the stand, the witness stated, responsive to an appropriate question, that he was not prepared to examine the machine at the plant as suggested, or to testify before the Committee on the basis of his findings, because he had no further testimony to give, and he refused to testify further. In response to a request for a statement of the reason for his refusal to testify further, the witness responded: "That is my own personal reason." The request of counsel for the Union, that the Committee issue subpoenas to certain designated persons for the purpose of ascertaining what might have happened overnight which may have caused the witness not to testify further, elicited the ruling by the majority of the Committee that if counsel insisted upon the testimony of the witness and he continued to refuse, an application should be made to the Court to adjudge the witness in contempt or otherwise to compel the witness' cooperation. The Chairman of the Committee having ruled that the arbitrators had no interest in inquiring why the witness Pezdirtz was refusing to testify further, counsel and the witness appeared before

---

3. The circumstances in which an arbitration award may properly be vacated are set down in 9 U.S.C. § 10.

the undersigned Judge of this Court and requested that the Court instruct the Committee to accept the offer of proof by counsel for the Union of the cause of the witness' refusal to continue to testify and to direct the Committee to subpoena before it the persons mentioned in the offer of proof. After hearing argument on the application, the Court concluded that it was without jurisdiction to intervene in the arbitration proceedings or to control the manner in which they were being conducted. After further application to the Committee by counsel for the Union, a majority of the members of the Committee signed and issued subpoenas directed to Pezdirtz, returnable January 14, 1966, and to Peter P. Romano and Daniel McColley (connected with the Wood Company), and to Theodore Newhouse (the controlling stockholder of the Ledger) returnable January 20, 1966.[4] When Pezdirtz resumed the stand in obedience to his subpoena on January 14, 1966, he reiterated his refusal to testify or to state the reasons for his continued refusal. In response to the Union's request that the Committee inquire into the reason or reasons for the witness' refusal to testify further, the Chairman of the Committee ruled that such inquiry would be irrelevant to the issues submitted to the Committee by the Order to arbitrate. There was ample basis for this ruling, upon the authorities hereinbefore cited. Further efforts by counsel for the Union to make an offer of proof of the reason why the witness had refused to further testify were overruled. The witness having sought an opportunity to confer with counsel respecting his rights, a five-day recess in the hearing was granted by a majority of the Committee for that purpose, and the witness excused until January 19, 1966. Arrangements were made to permit two journeymen stereotypers to examine the M.A.N. machine at the Ledger's plant to compensate for the refusal of Pezdirtz to do so or to resume his factual and expert testimony.

When the Committee reconvened on January 19, 1966, the attorney for Pezdirtz announced that he had consulted with his client who was then prepared to take the stand and resume his direct testimony. To the inquiry whether the witness was prepared to testify as to why he had refused to testify further, the witness' attorney stated that such testimony had been ruled to be irrelevant. The Chairman of the Committee then directed counsel for the Union to proceed with his questioning of Pezdirtz, but the Union's attorney refused to do so because, as he stated to the Committee, Pezdirtz had declined to familiarize himself with the M.A.N. machine at the Ledger's plant and, under a previous ruling of the Committee Chairman, was incompetent to testify further regarding its structure and operation. Counsel for the Union stated, as a further ground for his refusal to question the witness, that he had "offered an offer of proof to establish that this witness' original refusal to testify was caused by fear and duress brought about by these defendants and those in cahoots with them, and we have had subpoenas issued for Mr. Theodore Newhouse and for Mr. McColley, the President of the Wood Company, and Mr. Romano of the Wood Company, and to this witness [Pezdirtz] for the purpose of going into that. Now the Committee has ruled that it will not go into this matter, and, therefore, I am not privileged to inquire of this witness why he originally refused to testify or to go into that investigation. In view of these events and in view of the rulings of the Committee, in our view this witness is a spoiled witness, and the quicker he is disposed of the better." Accordingly, counsel for the Union stated that he had no questions to put to the witness Pezdirtz. The Union's attorney did not agree to release Pezdirtz from the subpoena which had been served upon him, lest he be

---

4. Pezdirtz was served with a subpoena. The subpoenas directed to Romano, McColley, and Newhouse were never served.

The issuance of new subpoenas was not requested by the Union upon the ground that such would be futile.

waiving any rights "to raise the question that he raised before, if, as and when an award is rendered here, that the award has been rendered improper because of the duress and fear that had been exerted upon this witness by these defendants and those in conspiracy with them to obstruct and impede the progress of this Committee, and so I may call him as a witness in that eventuality, * * *." Pezdirtz was then excused by the Committee.

## ALLEGED FRAUD

■ The question here is whether the award was procured by corruption, fraud or undue means as contemplated by the provisions of 9 U.S.C. § 10(a). I answer this question in the negative.

■ My examination of the transcript of the proceedings before the arbitrators, and of the affidavits submitted upon the motion to vacate the award, convinces me that there was no evident partiality or corruption in any of the arbitrators; that the arbitrators were not guilty of misconduct in any respect; and that there was no other misbehavior by which the rights of either of the parties have been prejudiced. As background to the Union's contention that the award was the result of corruption, fraud or undue means, there is evidence in the record that the Ledger is one of several newspaper publishing corporations controlled through stock ownership by Mr. Newhouse, whose companies were, or had been, equipment customers of the Wood Company. It is also clear upon the record that Newhouse received word that Pezdirtz had become a witness against one of the Newhouse companies in this adversary proceeding. Assuming that the displeasure, if any, of Mr. Newhouse with the activity of Pezdirtz, an employee of the Wood Company serving as an expert witness for the adversary Union, expressed itself in an alleged threat by Newhouse that he would no longer patronize the Wood Company, this is not, in my opinion, evidence which would justify this Court in vacating the pending award. The Union contends however that the attitude of Newhouse toward the employer of Pezdirtz served to deter Pezdirtz from completing the performance of his agreement with the Union to serve as an expert witness in the arbitration proceedings. The merits of the controversy submitted to the arbitrators were not dependent upon the attitude of Newhouse toward the employer of Pezdirtz nor can the award be said to have been procured by corruption, fraud or undue means because Newhouse, learning of Pezdirtz's testimony, had allegedly threatened to deprive the Wood Company of his business, and thereby allegedly prevented Pezdirtz from continuing to serve as an expert witness by the order, or at the request, of his employer. The rejection of the proffer by counsel for the Union of evidence of the reaction of Newhouse to the testimony of Pezdirtz, and the alleged threat of Newhouse to the employer of Pezdirtz did not deprive the Union of constitutional due process before the Committee (assuming any such constitutional right existed) nor did it deprive the Union of a fair hearing before the Committee. Moreover, the Union may not now be heard to complain of the refusal of Pezdirtz to continue testifying since his subsequent offer to do so was rejected by counsel for the Union.

## COMMITTEE'S AUTHORITY

■ A further ground urged by the Union for vacation of the award is to be found in the Union's contention that the employer did not have inherent authority to determine how many men should be assigned to man the M.A.N. machine. It is asserted by the Union that, in determining that the employer had such right, the Committee exceeded the appropriate scope of its adjudication. It is conceded that the arbitrators determined that only one man was required for the proper operation of the M.A.N. machine. That constituted the resolution, supported by substantial evidence, of the question submitted to arbitration. I find no basis in that regard upon which I could conclude that the arbitrators either exceeded their powers or so imperfectly executed

them that a mutual, final and definite award upon the subject matter submitted was not made.

Because I find no basis in the record before me disclosing any of the grounds set forth in 9 U.S.C. § 10 to justify the vacation of the award, the motion to vacate the same is denied and the motion of the defendants to confirm the same is granted.

Let an Order in conformity with the foregoing Opinion be presented.