**BLOCK PONTIAC, INCORPORATED**

v.

**Philip A. CANDANDO**

and

**Automotive & Body Builders Local Union #724 of the International Association of Machinists.**

No. 41425.

United States District Court
E. D. Pennsylvania.

Oct. 11, 1967.

James F. McCort, Philadelphia, Pa., for plaintiffs.

M. Kalman Gitomer, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

Plaintiffs, Philip A. Candando and Automotive & Body Builders Local Union #724, hereinafter collectively referred to either as plaintiffs or the Union, filed a petition in the Philadelphia Court of Common Pleas on October 11, 1966, to set aside an arbitrator's award upholding the propriety of the discharge of plaintiff-employee, Candando. The defendant-employee, Block Pontiac, removed the case to this court under Title 28 U.S.C. § 1441. Plaintiffs now ask this court to remand the action to the state court on the theory that there is no federal question involved and that therefore this court is without jurisdiction to hear it. The defendant opposes this motion and also moves to dismiss the plaintiffs' petition on the merits.

The genesis of the current litigation, as indicated in the record before the Court, was a work-stoppage allegedly instigated by Candando on October 27, 1965.[1] The work-stoppage lasted for several hours during the afternoon of October 27, and terminated on the morning of October 28, 1965. Defendant-employer considered the work-stoppage illegal under Article XII of the effective Collective-Bargaining Contract entered into by the respective parties March 2, 1964.[2] The employer accordingly conducted an investigation of the stoppage, concluding that Candando was primarily responsible.[3] In accordance with Article XII and Article III of the Collective Bargaining Agreement, the employer decided to discharge Candando.[4]

Candando was notified of the company's action in a letter signed by M. Kalman Gitomer, attorney for the company, under date of November 12, 1965.[5] The

1. The record here included plaintiff's petition to set aside the arbitration award, defendant's petition for removal, plaintiff's petition to remand, and defendant's motion to dismiss. Attached to the defendant's petition for removal was a copy of the collective bargaining agreement, copies of Arbitrator Horlacher's two opinions, and copies of pertinent affidavits presented as exhibits at the arbitration hearings. None of the material facts appearing in these documents was disputed by either party.

2. See the Collective Bargaining Contract, marked Exhibit 8 and attached to the defendant's Petition for Removal. Article XII, NO STRIKES OR LOCKOUTS, provides that: "The Union, Employer and the Employees agree that there shall be no strikes, boycotts, lockouts, slowing down of production or any interference whatsoever by the employees during the life of this agreement, except for failure of the Employer or the Union to abide by an arbitrator's award, and that in the event differences or disputes should arise between the Employer and Union or its members as to the meaning and application of this agreement or should any local trouble of any kind arise, there shall be no suspension of work by employees on account of such differences. The parties further agree that in the event of a violation of the terms of this Article, disciplinary action, including discharge, may be taken against any employees who take part therein."

3. See defendant's letter of November 12, 1965, to Candando, marked Exhibit 2 and attached to the defendant's Petition for Removal.

4. See Footnote 2, supra. Article III, RIGHTS OF MANAGEMENT, provides that: "The management of the business and the direction of the working forces, including * * * the right to * * * discharge for proper cause * * * is vested exclusively in the Employer, provided this will not be used for purposes of discrimination against any member of the Union or in violation of any of the terms of this Agreement, subject to grievance procedure of the contract."

5. See Footnote 3, supra. The letter reads in pertinent part: " * * * I (Mr. Gitomer) have been authorized by the company to advise you that its findings indicate that you were clearly responsible for the illegal work stoppage. Under the contract, you are advised of the company's decision to discharge you * * * Since you are the union steward and

letter initiated the grievance procedure established under Article XIII of the Collective Bargaining Agreement.[6] The Union preliminarily objected to the procedure which the company had set in motion, but by the late Fall of 1965 acquiesced to the selection of Dr. John Perry Horlacher as the impartial arbitrator to hear the dispute.[7]

The Union maintained its objections to the arbitrator's jurisdiction, and the latter heard arguments on that issue at a hearing conducted on January 7, 1966. The Union then presented four separate objections to the propriety of the arbitration proceeding:

(a) Gitomer had neither real nor apparent authority to discharge any of the employees of Block, and therefore Candando had not been discharged and there was in effect no dispute before the arbitrator;

(b) The employer, Block, could not initiate a grievance procedure under the terms of Article XIII, which authorizes only " * * * one-way arbitration; "

(c) If the Arbitrator were to proceed on the merits involved and sustain the Company, *he* would be discharging Candando, something he had no authority to do;

(d) The question of whether a dispute is arbitrable or not is a matter for the courts, rather than the arbitrator to decide.[8]

Arbitrator Horlacher considered the Union's arguments and, in a comprehensive written opinion, decided on March 1, 1966, that he had jurisdiction of the dispute.[9] No immediate appeal was taken from Dr. Horlacher's decision. Accordingly the arbitrator attempted to arrange a date satisfactory to both parties for a hearing on the merits of the dispute. When no mutually satisfactory date could be agreed upon, the arbitrator set September 8, 1966 for the hear-

in order to reflect the company's complete objectivity in this matter, we hereby offer you the opportunity of continuing to work pending the arbitrator's decision. Unless we hear from you or from your union to the contrary, we shall assume that you have accepted this offer. Accordingly, we are serving arbitration notice in accordance with Article XIII of the contract upon the Federal Mediation and Conciliation Service to furnish a panel of impartial arbitrators from which any appropriate selection will be made in accordance with the terms of the labor contract."

6. See Footnote 2, supra. Article XIII, ADJUSTMENT OF GRIEVANCE AND ARBITRATION, establishes the following grievance procedure:

"(a) A grievance is defined as a controversy between the parties concerning the interpretation or application of this agreement * * *

(b) If no satisfactory settlement can be agreed upon (privately) either party may refer the controversy to arbitration providing it is referred within five (5) days of the decision referred to * * * above. If the parties are unable to agree upon an arbitrator * * * then either party may request the Federal Mediation and Conciliation Service to furnish a panel

of impartial arbitrators from which selection must be made within five (5) days after receipt of such panel list.

(c) The arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision on any grievance properly coming before him but he shall not have the authority to amend or modify this agreement or to establish any terms or conditions of this agreement. Further, he shall have authority to apply and interpret the provisions of this agreement only insofar as may be necessary to the determination of such grievance * * *

(d) The decision of the arbitrator shall be final and binding * * * In the event * * * that either party refuses to comply with the procedures of this Article, the other party shall have the right to immediately take all legal or economic recourse."

7. See page 4 of the sworn affidavit of Mr. Gitomer, marked Exhibit 3 and attached to the defendant's Petition for Removal.

8. See, plaintiffs' Petition To Strike and Set Aside Arbitrator's Award and Sustain Objections, pages 3–5.

9. See the copy of Arbitrator Horlacher's Opinion, marked Exhibit 6 and attached to the defendant's Petition for Removal.

ing.[10] Despite having received notice of the time of the hearing the Union did not appear for the hearing. The absence of the Union was conceded at the oral argument before this court to be a conscious and advised refusal to participate further in the arbitration process. Dr. Horlacher proceeded to hear the case, and, in a written opinion dated September 21, 1966, decided it on the merits against the Union.[11]

On October 11, 1966 the Union petitioned the Court of Common Pleas for the County of Philadelphia to strike and set aside the arbitrator's award and to sustain exceptions thereto. The petition was filed pursuant to the Pennsylvania Rule of Civil Procedure and under the Act of 1836, June 16, P.L. 715, 5 P.S. § 4. The petitioner challenged the arbitrator's award by raising the same jurisdictional objections raised and decided in the arbitrator's opinion of March 2, 1966. A further jurisdictional objection was raised at this time.[12] The employer did not respond to this petition in the state court, but instead removed the action to this court under 28 U.S.C. § 1441, and thereafter moved to dismiss on the ground that plaintiffs' petition failed to state a claim upon which relief could be granted.

■ This court finds no merit in the plaintiffs' contentions with respect to the motion to remand. Plaintiffs' original petition in the state court clearly falls within the scope of Title 29 U.S.C. § 185, § 301 of the Labor-Management Relations Act. The critical phrase in the statute is " * * * industry affecting commerce * * * " which is defined in Title 29 U.S.C. § 142:

(1) The terms "industry affecting commerce" means any industry or activity in commerce or in which a labor

dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce.

The courts consistently have interpreted the phrase broadly as reflecting Congress' intention to exercise its full power of regulation over interstate commerce. Pappas v. American Guild of Variety Artists, 125 F.Supp. 343 (D.C.N.D.Ill. 1954); Prospect Dairy, Inc. v. Dellwood Dairy Co., 237 F.Supp. 176 (D.C.N.D. N.Y.1964); National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014 (1939). The Supreme Court in *Fainblatt,* supra, indicated the applicability of the National Labor Relations Act to the present case:

" * * * we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim *de minimis.*"

■ Even if the employer is not involved in interstate commerce this case would still come within the terms of Title 29 U.S.C. § 185 since it is a sufficient basis for jurisdiction if the union *only* is involved in an industry affecting commerce. The union's petition to set aside alleges that " * * * Local Union #724 is engaged in an industry affecting commerce."

■ Plaintiff argues against the applicability of the Labor Management Relations Act on the ground that his petition to strike is in the nature of an "appeal" rather than a " * * * suit for violation of a contract * * * ", and thus is distinguishable from actions under § 185. Plaintiffs brought their

---

10. See, pages 1–3 of Arbitrator Horlacher's Opinion on the Merits. A copy of this opinion is marked Exhibit 7 and is attached to the defendant's Petition for Removal.

11. See, Arbitrator Horlacher's Opinion, noted in Footnote 10, supra.

12. This new objection was that "Arbitrator Horlacher had neither the power, right, or authority to determine the issue of jurisdiction, since the Federal Mediation and Conciliation Service and its rules and regulations do not confer such a right upon him * * * " See, Paragraph (e), page 5 of the Union's Petition to Strike.

suit in the state court under the authority of the Pennsylvania Act of 1836, P.L. 715, 5 P.S. § 4, entitled Exceptions to Award. This statute does not employ the language of "appeal". Another Pennsylvania Statute, Pa. Act of 1836, June 16, P.L. 715, § 27, 5 P.S. § 71 entitled *Parties may appeal*, has no application to this case because it deals with the procedure when the arbitration involved is a matter of compulsory submission during the *pendency* of a suit.

Finally, the substance of plaintiffs' action, no matter how it is entitled, is the allegation that the arbitration procedure pursued by the defendant was a violation of the collective bargaining agreement. Title 29 U.S.C. § 185 clearly has been extended to such types of disputes. See, E. g., Central Metal Products, Inc. v. International Union, 195 F. Supp. 70 (D.C., E.D.Ark., 1961); Amalgamated Meat Cutters and Butcher Workmen of North America v. M. Feder & Co., 224 F.Supp. 739 (E.D.Pa., Opinion by Van Dusen, Jr., 1963); Ludwig Honold Mfg. Co. v. Fletcher, 260 F.Supp. 917 (E.D.Pa.1966); Retail Clerks International Ass'n etc. v. Lion Dry Goods, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962).

■ Of course, once it is established that the present action comes within Title 29 U.S.C. § 185 removal to this court was proper under Title 28 U.S.C. § 1441(a). This statute establishes an absolute right to remove from state to federal courts any civil action "* * * of which the district courts of the United States have original jurisdiction * * *" See, Ludwig Honold Mfg. Co. v. Fletcher, supra, 260 F.Supp. at p. 918.

Having decided that this court does have jurisdiction of the action, it is now proper to consider the defendant's motion to dismiss that petition on the merits. The limited scope of judicial review of decisions in labor law arbitration has been reflected in both suits to compel arbitration, E. g. Smith's Transfer Corp. etc. v. Local Union No. 107, Int. Bro. of Teamsters, 241 F.Supp. 738 (D.C.E.D. Pa., Opinion by Kraft, J., 1965); United

Textile Workers of America etc. v. Newberry Mills, 315 F.2d 217 (C.A. 4, 1963); Rhine v. Union Carbide Corp., 343 F.2d 12 (C.A. 6, 1965); American Radiator, etc. v. Local 7 of Int. Bro., 358 F.2d 455 (C.A. 6, 1966); and in suits reviewing final decisions of arbitrators, E. g., Local 7-644, Oil, Chemical and Atomic Workers International Union, etc. v. Mobil Oil Co., 350 F.2d 708 (C.A. 7, 1965); Balowski v. International U., United A., A. & A. Imp. Wkrs., 372 F.2d 829 (C.A. 6, 1967); Newark Stereotypers' Union v. Newark Morning Ledger Co., 261 F.Supp. 832 (D.C.N.J., 1966); Foster-Forbes Glass Company v. Glass Bottle Blowers Association of United States and Canada, 263 F.Supp. 729 (D.C.N.D.Ind., 1967).

*Oil, Chemical,* supra, 350 F.2d p. 711, refers to judicial review of arbitration decisions in language representative of the settled law in that area, i. e., "A court's rule in reviewing arbitration decisions made pursuant to labor contracts is severely circumscribed." This reference is consistent with the guidelines set for judicial review of arbitration by the Supreme Court in the *Warrior-Gulf* trilogy:

"So far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

■■ *Oil, Chemical,* supra, indicates that the two proper inquiries upon review are whether the award was arbitrary and/or whether the arbitrator exceeded his authority. It is error for the reviewing court to consider afresh the merits of the dispute submitted for arbitration, and reversal of the lower court in *Oil, Chemical,* itself was based upon just such error. Language from *Newark Stereotypers,* supra, is to the identical effect as that from *Oil, Chemical* quoted above:

"It is the general rule that the courts will refuse to review the merits of an

arbitration award \* \* \* his (the arbitrator's) interpretation and application of the collective bargaining agreement, and the arbitration which flows from such collective bargaining agreement, will not be questioned by the courts where the arbitrator has authority to act. \* \* \* *The award may not be examined for alleged mistakes of law and erroneous evaluation of evidence.* \* \* \* ", 261 F.Supp. page 835.

The limited scope of judicial review of arbitration awards challenged solely under Title 29 U.S.C. § 185 is reflective of the limitations on review followed by federal courts generally in dealing with petitions to vacate arbitration awards under Title 9 U.S.C. § 10.[13] See, CCH, Labor Law Reporter, Union Contracts and Arbitration, Volume 1, Paragraphs 57, 097, p. 81, 067; See also generally, Amicizia Societa Nv. v. Chilean Nitrate & Iodine S. Corp., 274 F.2d 805, 808 (C.A. 2, 1960); Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Monte v. Southern Delaware County Authority, 212 F.Supp. 604, 613 (E.D.Pa., Opinion by Wood, J., 1963). Thus, the fact that a petitioner has expressly or implicitly invoked Title 9 U.S.C. § 10 in challenging an arbitration award does not broaden the limited review which this court is authorized to make in the labor law context. See, *Newark Stereotypers,* supra, 261 F.Supp. p. 835; Metal Products Workers Union, etc. v. Torrington Co., 242 F.Supp. 813 (D.C.Conn., 1965). This result is consistent with the peculiar nature of arbitration in the labor law area:

"Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here." United Steelworkers of America, etc. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed. 2d 1409 (1959).

■■ Finally, the standards used by federal courts in disposing of motions to vacate arbitration awards are identical with those contained in the analogous Pennsylvania Statute, i. e., Act of 1927, April 25, P.L. 381, 5 P.S. § 170. This coincidence between the relevant state and federal statutes supports limited judicial review of arbitration in a case reaching the federal courts through the removal machinery of Title 28 U.S.C. § 1441. It also undercuts the rationale of plaintiffs' motion to remand, i. e., that there are considerations uniquely applicable to judicial review of labor arbitration in the Pennsylvania courts.

■ Mindful of these strict limitations upon its review of arbitration proceedings, it is clear that the Court must sustain the motion to dismiss the Union's petition because it does not allege a cause of action upon which the Court could grant relief. Most of the Union's contentions here are similar to those raised before Dr. Horlacher at the hearing of January 7, 1966.[14] These questions are directed to the "procedural" requirements of the grievance procedure, and thus are questions which the Supreme

---

13. See, Title 9 U.S.C. § 10, SAME, VACATION: GROUNDS: REHEARING, which provides that: "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

14. See page 4, supra.

Court has specifically held should be left to the final disposition of the arbitrator, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1963).

■ The Union also raises the argument that the issue of the arbitrator's jurisdiction, whether viewed as a procedural or substantive matter, must first be decided by a court rather than by the arbitrator. Clearly, strong policy interests are opposed to the rule contended for by the plaintiffs. Such a procedural requirement would disturb significantly the orderly procedure of the informal settlement machinery contemplated by the Supreme Court, United Steelworkers of America, etc. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1959). Moreover, there is no necessity for such a requirement, as the issues which would be presented to the court, i. e., the authority of the arbitrator, are the same as those with which federal courts may and do deal now in suits brought *subsequent* to an arbitration award, *Steelworkers*, supra, p. 582, 80 S.Ct. 1347. Finally, the two state cases cited by plaintiff do not support his contentions. Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Bd. of Phila., 426 Pa. 53, 231 A.2d 160 (1967) permitted prior judicial determination of the arbitrator's jurisdiction when the claimant was not a signatory to the collective bargaining agreement, and Aughenbaugh v. North Amer. Refractories Co., 426 Pa. 211, 231 A.2d 173 (1967) actually reflected the federal policy in favor of judicial review *following* arbitration, as enunciated here.

■ Plaintiffs' related argument that the arbitrator does not have the power under the rules and regulations of the Federal Mediation and Conciliation Service to determine his own jurisdiction, is equally without merit. It is apparent that such a power must be necessarily implied if the arbitration machinery is to function at all.

■ Plaintiffs' final objection to the arbitration award, and the traditional objection raised by petitioners in analogous cases, is that the arbitrator was without the authority to rule on the particular matter in dispute. It is clear that this contention is without merit. Even a superficial examination of the relevant Articles of the Collective Bargaining Agreement, Articles III and XII, indicates that the matter of discharge of an employee was within the arbitrator's jurisdiction as defined in Article XIII, §§ (a) and (c).[15] This conclusion is consistent with the assumption favoring arbitration:

> "unless it may be said with *positive* assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute * * " *Warrior and Gulf,* supra. (Emphasis added).

■ Finally, the record suggests two possible grounds upon which the arbitrator's award could be challenged under Title 9 U.S.C. § 10: (1) the arbitrator's reception of affidavits objected to as self-serving by the Union; and (2), the arbitrator's failure to postpone the hearing. Neither of these actions is so inconsistent with the standards established in the Code of Ethics and Procedural Standards for Labor-Management Arbitration, under § 4, The Hearing, and § 2, Hearing Arrangements, respectively, as to impugn the integrity of the arbitration.[16]

For the reasons discussed above, the defendant's motion to dismiss plaintiffs' petition on the merits is granted.

## ORDER

And now, this 11th day of October, 1967, the motion of the plaintiffs to remand is denied, and the motion of the defendant to dismiss plaintiffs' petition is granted.

15. See Footnotes 2, 4, and 6, supra.

16. This code was adopted by the American Arbitration Association, the National Academy of Arbitrators, and the Federal Mediation and Conciliation Service. It can be found in CCH, Labor Law Reporter, Arbitration, Volume 1, page 81, 145 et. seq.