**TRANSPORT WORKERS UNION OF PHILADELPHIA, A. F. L.–C. I. O., LOCAL 234**

v.

**PHILADELPHIA TRANSPORTATION COMPANY.**

Civ. A. No. 43579.

United States District Court
E. D. Pennsylvania.

April 25, 1968.

Eugene John Lewis, Philadelphia, Pa., for plaintiff.

Robert M. Landis, R. Neal Risley, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

Plaintiff, Transport Workers Union of Philadelphia, A.F.L.–C.I.O., Local 234, hereinafter referred to as the Union, instituted this action against the Philadelphia Transportation Company, hereinafter referred to as the Company, on August 30, 1967, in the Philadelphia County Court of Common Pleas. The Union's action there was in the form of a petition and rule to show cause why an Arbitrators' Award should not be vacated. The Company did not appear in the state action but instead removed the case to this Court pursuant to Title 28 U.S.C.A. § 1441 and Section 301 of the Labor Management Regulations Act, Title 29 U.S.C.A. § 185. See generally, Block Pontiac, Inc. v. Candando, 274 F. Supp. 1014, 1018 (E.D.Pa., 1967), and cases cited therein. The Union here still pursues its petition to vacate the arbitration award which upheld the discharge of Albert Martin, a Union member formerly employed by the Company. The Company moves to dismiss the plaintiff's petition on the merits. For reasons discussed below this Court denies the plaintiff's petition and grants the defendant's motion to dismiss.

The genesis of the current litigation, as indicated in the record before the Court, was an altercation occurring on December 7, 1966, between Martin, who was at that time employed as a bus-driver for the Company, and one of his passengers, a Mr. Ronald Tevelson.[1] The Company discharged Martin on December 9, 1966, ostensibly for three reasons: (1) the "assault" on Tevelson, (2) a failure to report the incident to his superiors, and (3) an unsatisfactory work record. See, Opinion of Impartial Chairman, p. 10.[2] The Union immediately filed a grievance charging that the Company had arbitrarily discharged Martin. After exhausting the preliminary steps of the grievance procedure, established under the collective-bargaining contract signed by the parties on January 15, 1965, the Union, pursuant to Article 2, § 202 of that Contract, made a demand for arbitration of the dispute by a three-member Board of Arbitration.[3]

The three-member Board of Arbitration was composed of Earl Kidd, Union Arbitrator, Henry Aikens, Company Arbitrator, and J. Hazen Hardy, Jr., Impartial Chairman. The Board conducted a hearing on April 18, 1967, heard arguments by the parties on June 14, 1967, and rendered an opinion on July 27, 1967, which concluded that Martin's discharge was for " * * * just and

---

1. The record includes the Union's petition to vacate, the Company's petition for removal with attached exhibits including the relevant portion of the collective-bargaining agreement between the Union and the Company and a copy of the award and opinion of the Arbitration Board, i. e., "Opinion of Impartial Chairman", and the Company's answer to the Union's petition. Also included in the record is a stenographic record of the hearing conducted on April 18, 1967, marked C–1 and admitted into evidence at the oral argument hereby agreement of counsel.

2. The Union has contended that the discharge initially was based only upon the assault and Martin's subsequent failure to report it, and that reference to Martin's work-record was an after-thought

on the part of the Company. See, Transcript of the Hearing, pp. 126–129. Although resolution of this contention is not critical here it is clear that the Arbitration Board did consider all three grounds, see Impartial Opinion, pp. 15–16, and this Court will accordingly treat Martin's discharge in similar fashion.

3. Article 2, § 202 reads, in pertinent part: "(a) In the event the disposition of a grievance by the Company's third step representative is not satisfactory to the Union, the Union may cause the grievance to be referred to a board of arbitration as hereinafter provided * * * (c) the proceeding will be conducted under the Rules of the American Arbitration Association."

proper cause. * * * " [4] The seventeen page opinion reflected the Board's comprehensive review of the merits of the dispute as established by the testimony of six witnesses, the three central witnesses being Tevelson, Martin, and Quentin Maxwell—a lessee of the Company who operated a cab-dispatching stand located at the Company's terminal at 54th and City Line Avenue in Philadelphia, and as established by six exhibits.

■■ The scope of this court's review of any Arbitration Board's decision in the labor law area is extremely limited. See, *Block Pontiac,* supra, 274 F.Supp. at pp. 1019–1020, and cases cited therein. In such cases the established law is that the reviewing court should neither probe into the merits of the case nor examine the arbitration award for mistakes of law and/or alleged erroneous evaluation of evidence, but instead should inquire only whether the award was arbitrary or whether the arbitrator exceeded his authority. See, Local 7–644, Oil Chemical and Atomic Workers International Union v. Mobil Oil Co., 350 F.2d 708 (C.A. 7, 1965). Although this suit is grounded upon Title 29 U.S.C.A. § 185, § 301 of the Labor Management Relations Act, and not upon Title 9 U.S.C.A. § 1 et seq., the U. S Arbitration Act, July 30, 1947, § 1, c. 392, 61 Stat. 669, the standards established in Section 10 of the latter Act for guiding a court in vacating commercial arbitration awards are helpful here:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators * * *.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Employing these standards to review labor law arbitration is a sanctioned practice. See generally, Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 261 F.Supp. 832 (D.C.N.J. 1966), and Metal Products Workers Union, etc. v. Torrington Co., 242 F.Supp. 813 (D.C.Conn., 1965).

The Union has limited its argument in support of vacating the award to a single contention: that the Company's attorney-in-fact, Mr. Sutcliffe, at the hearing, violated the Board's direction that the two critical witnesses, Mr. Maxwell and Mr. Tevelson, be sequestered; that the Arbitration Board nonetheless permitted both witnesses to testify; and that, therefore, Mr. Martin was not accorded the fair and impartial hearing to which he was entitled. It is clear in fact that at the very inception of the hearing Mr. Lewis, the Union's attorney, requested sequestration of these witnesses and that the Board of Arbitration granted this request. See, Transcript, p. 1. It is also clear that a violation of the sequestration procedure occurred in that, during an adjournment after Mr. Tevelson had taken the stand but prior to the taking of any of his testimony, Mr. Sutcliffe spoke with Mr. Tevelson and reviewed Mr. Maxwell's testimony with him. See, Transcript pp. 42–49. Finally, it is clear that Mr. Lewis apprised the Board of this violation of the sequestration procedure, and that the Board nonetheless permitted Mr. Tevelson to testify. See, Transcript, pp. 48–49. But, although all these contentions of the Union are estab-

4. The Union Arbitrator, Earl Kidd, dissented from the Board's Opinion, but his reasons for doing so do not appear on the record.

lished, and substantially conceded by the Company, this Court still has decided that it must deny plaintiff's petition.

The Union has presented no facts which would support vacating the arbitration award pursuant to § (a), (b) or (d) of Title 9 U.S.C.A. § 10, i.e. there has been no evidence or contention that the Board acted with "fraud", or "evident partiality", or that it " * * * exceeded * * * (its) powers, or so imperfectly executed them that a * * * final * * * award * * * was not made." The essential thrust of the Union's contention relates to sub-section (c) of Title 9 U.S.C.A. § 10 in that the Union claims that the Board's failure to enforce the sequestration procedure prejudiced Mr. Martin's right to a fair hearing. The Company's opposing argument in substance is that it is the arbitrator's rather than the court's function to dispose finally of "procedural" matters growing out of a labor dispute. See, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964).

■■ Most cases following the *Wiley* decision as to the finality of the arbitrator's decision of "procedural" matters, have dealt with broad jurisdictional issues, e.g. whether a grievance was filed within the proper time-limits, See E.g. Avco Corp., Electronics & Ordnance Div. v. Mitchell, 336 F.2d 289, 291, 292 (C.A. 6, 1964), when and where the arbitration hearing was to be held, See, e.g. Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul and Pacific R. Co., 237 F.Supp. 404, 422, 423 (D.C., 1964), whether use of the grievance procedure before arbitration would have been futile, See, e.g. Lithographers & Photoengravers Int., etc. v. Rittenhouse Press, Inc., 259 F.Supp. 160, 161 (E.D.Pa., 1966). A fortiori, finality should be accorded to the arbitrator's decisions of procedural questions, such as the alleged sequestration violation here, which relate to the conduct of the hearing. Although arbitration hearings are of a quasi-judicial nature the prime virtue of arbitration is its informality, and it would be inappropriate for courts to mandate rigid compliance with procedural rules such as sequestration. See generally, Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 21 (C.A. 2, 1962).

■ Although there is some authority supporting more expansive judicial supervision of arbitration hearings when it is alleged that the petitioner was not accorded a fair hearing, reversal of the arbitrator's decision has been deemed appropriate primarily when it appears that his challenged rulings precluded consideration of all the relevant and pertinent evidence. See, Harvery Aluminum v. United Steelworkers of America, AFL-CIO, 263 F.Supp. 488, 493–495 (C.D. Calif., 1967), and generally Newark Stereotypers' supra, 261 F.Supp. at pp. 836–838, and In re Compudyne Corporation, 255 F.Supp. 1004, 1008–1009 (E.D. Pa., 1966). The petitioner's argument here is not that the arbitrator refused to hear pertinent testimony, but rather that his failure to direct compliance with the sequestration procedure resulted in his considering allegedly perjured testimony. In effect the petitioner is attacking the credibility of the witnesses and this is a matter peculiarly suitable for the final judgment of the arbitrator. See, Kirschner v. West Co., 247 F.Supp. 550, 553 (E.D.Pa., 1965). The Arbitration Board here was aware of all circumstances which might have affected Tevelson's credibility and its Opinion both reflected this awareness and the conclusion that Martin had been accorded a full and fair hearing despite the conceded violation of the sequestration order.

■ This Court has reached its decision reluctantly for it believes that the Board's failure to enforce its own Order could only serve to weaken its image as an impartial, judicial tribunal. Notwithstanding the Board's failure in this respect its decision is amply supported by the record as a whole and therefore this Court cannot conclude that the arbitrators were guilty of " * * * any * * misbehavior by which the rights of (Mr.

Martin) * * * have been prejudiced."
See, Title 9 U.S.C.A. § 10, sub-section (c).

For all of the above reasons, the petitioner's motion to vacate the arbitration award of July 27, 1967, upholding the discharge of Albert Martin is denied, and the Company's motion to dismiss is granted.